Our first case for argument this morning is Harold Johnson v. Statewide Investigative Services, and I believe we have Mr. Gomberg online, is that right? Yes, Your Honor. All right, can you hear me? I can.  Thank you, Your Honors. May it please the court and counsel, I do want to thank the court for allowing me to do this by Zoom. The lower court, as you know, determined that Mr. Johnson, whether or not he was a supervisor, was a material issue of fact. If a jury finds that Mr. Johnson was not a supervisor, then it can also find that the statewide reason for terminating Mr. Johnson was a pretext for age discrimination. As you know, Mr. Johnson was demoted two years approximately before he was discharged, and when he was discharged and before that, he asked if he could work part-time. So Mr. Gomberg, with regard to that point, where in the record is evidence that he requested from the supervisor that, or from his immediate supervisor, that he be allowed to work part-time? It was in one of the answers to the interrogatories, Your Honor. Okay, is it anywhere else other than the answers to the interrogatories? It may have been mentioned in his deposition, it probably was, but honestly, I don't remember offhand. Yeah, when I looked through his deposition, I didn't find any reference to him mentioning that. The interrogatory responses, did you place that before the district court in your opposition to the motion for summary judgment? Yes, Your Honor. Okay. Mr. Gomberg, to follow up on that, your response to the summary judgment, the specific docket entry is 88. It's Plaintiff's Local Rule 56.1b3, response to facts and statements. Was there ever a request made by Mr. Johnson to have an opportunity to properly support the position? Meaning, sometimes it used to be called 56F, sometimes now it's called 56D. When facts are unavailable to the non-movement, they can request from the court an opportunity for further discovery. When we see arguments from an appellant that they haven't had an opportunity to sufficiently explore the record, that's one of the things we can look for is whether or not there was a request to do further discovery. Did that take place here? I don't remember a request to do further discovery. What happened, as you may know, is the other side stopped the deposition in the middle. They were claiming that I was talking to Mr. Johnson when I was just asking my clerk for a cup of coffee. And so they stopped it. The magistrate judge gave them an opportunity three times to restart the deposition. And then they decided they never did so. And that's why we filed the declaration that you're aware of. What does the record tell us about how he was classified for pay purposes? I thought there was some evidence that payroll records established that your client was a supervisor throughout the relevant time period. I'm not aware of that, Your Honor. If there is something, it's not something that I remember seeing. And I know that the issue in terms of pay was it was like $1 difference between what Mr. Johnson was getting and the new younger people that were hired part time right after him. And there was an issue regarding his wearing a shirt, a white shirt, which that was the testimony about that was they didn't want to spend the money to give him a blue shirt. So they said it was OK to keep a white shirt. But there is no other evidence that I'm aware of that indicates after the demotion that he was a supervisor. And in fact, he testified, Mr. Johnson, that he never did anything either before or after the motion that was different than what regular guards did. He never actually did supervisory duties. And as you know, there was some flack about the fact that he had a Facebook page that had a name of a chief security officer. And they were wondering why that was there. And Mr. Johnson testified about that, but didn't get to complete his testimony and clarify why that was still on the Facebook. But he said that he didn't even remember that he had that at one point. And of course, I mean, he was 77 years old, not a youngster who knows how to do computer work. But I'm not aware of anything else that supports the issue that he was a supervisor when he was terminated. And the lower court did find that it was a material issue of fact of whether or not he was a supervisor when he was terminated. And it's my opinion that if the jury found that he was not a supervisor, the jury can also then find that the reason for letting him go was a pretext for age discrimination. And that becomes into real focus when you take into account in the lower court, he did not even mention that he asked, Mr. Johnson asked to be part-time. And just weeks afterwards, Statewide went out. I mean, the request was rejected. And just weeks afterwards, Statewide hired a number of part-time security guards, years and years and years younger than Mr. Johnson at the same very same location. Mr. Gomberg, did Statewide ever articulate any other reason to Mr. Gomberg, I mean, to Mr. Johnson as to why they were terminating him other than the fact that they wanted to, they were eliminating the supervisor position? Not that I'm aware of, Your Honor, no. That's what they said, they were eliminating it. That's the material issue of fact because he was already demoted. He clearly was not a supervisor. And that's the disputed material issue of fact that hangs over the case when he was terminated. And as I understand it, there was no assertion that Statewide, for example, was getting rid of the supervisory position for financial reasons or anything related to payroll or anything like that?  Your Honor, I know there may have been a change in the relationship. To be fair, there may have been a change in the way the structure at the school where he was a security guard. But that had nothing to do with Mr. Johnson in the sense that they still went ahead and hired people to take over that position, doing the same duties and doing the same location, sitting at the same desk that Mr. Johnson was. And they always said Johnson was doing a good job. It was never a performance issue. In fact, they said there was no performance issue. So, they just got rid of an older worker is really what it amounts to, a much older worker. I guess I better save my rebuttal time. That's fine. Thank you. Thank you, Your Honors. Thank you. Ms. Mathias? May it please the Court, good morning, and thank you for taking time to hear from us today. My name is Megan Mathias. I represent Statewide Investigative Services in this matter. As you know, the judgment was entered in this case on September 19, 2022. The trial court in the judgment identifies the correct burden-shifting framework under McDonnell Douglas. The initial burden is on the plaintiff to identify similarly situated employees who are not members of the protected class and treated more favorably. The plaintiff does not meet his burden. He cannot identify such persons outside the class that were treated more favorably. Ms. Mathias, but we also, under Ortiz, have to look at the totality of the circumstances, right? Yes. And to see if there's a factual dispute that might necessitate a trial. If I could ask you the same question I asked Mr. Gomberg, did Statewide articulate any other reason for terminating Mr. Johnson other than the fact that they were going to eliminate the supervisor position because they did not feel the position was necessary? No. And in fact, they said the position was being eliminated. And what I would like to talk about a little bit, if I have the time, is how in the response that's document 88, it's not a verified response to the statement of fact. Some of those admissions or should be deemed, in fact, should be deemed admitted because the answer, the response to the statement of fact does not include a verification. And therefore, some of the very critical facts are actually fatal to the plaintiff's case. But I guess what I'm trying to ask, what I'm trying to get at, and perhaps inartfully, is that, for example, Statewide never told Mr. Johnson that they wanted to get rid of all full-time positions because they wanted to go all part-time because of financial reasons. Or that they thought that the work didn't require anyone to be there full-time and they wanted to hire everyone on a part-time basis. They didn't articulate any sort of reason like that. Is that correct? Mr. Bruni did testify in his deposition about how he doesn't, why he didn't believe there was a need for the supervisor position at the location. Mr. Johnson was the only one that worked full-time and had the supervisory role. For example, there's some discussion about when there's a bomb threat that's in the statement of facts that the employees were instructed to go to Mr. Johnson. There had been basically so many years with no events that they decided that they didn't need the full-time supervisory position. Right, but it wasn't because of financial need. Is that correct? So, for example, I think Mr. Bruni testified that it wasn't because it was financially driven. It was just they didn't think that they needed the position with, basically, with the supervisor duties at that location. We've also slipped between full-time and supervisory, and those are technically different concepts, correct? Correct. Theoretically, at statewide, the supervisors were full-time, but theoretically, you could still have, in general, in the industry, a supervisor that was part-time. But at statewide, there were two client locations, and it's in the record, where there were supervisors, and one of them was the Campbell client location, which is where Mr. Johnson worked throughout his employment, and it was a full-time position. Is it possible for one full-time employee working 40 hours a week to be replaced by three part-time employees of a younger age, and that be discriminatory? Yes. I think the issue here is that they didn't – what Mr. Bruni testified to was, like in the police department, because these are mostly all retired or some of them current police officers, once you're a boss or a chief, it's hard to go back to being a patrolman because then there's this dynamic that's difficult. And so Mr. Bruni testified about how that would be perceived by the rest of the staff and probably not welcomed. But yes, theoretically, I guess if you're only talking about the security guard duties, of which a supervisor also includes that in their job, then you could do that. But a supervisor here has more responsibilities, and again, that wasn't properly denied. If you look at the response that was filed in its document 88 in the underlying record, a number of the paragraphs have a denial in the response, but because it's not verified pursuant to Local Rule 56.1, those are deemed admitted, and those are critical facts here. Can you point me to the paragraphs that you're talking about? Sure, let me go through in detail. It's essentially all of them, but because of the way it's written. The response to paragraph 3, plaintiff denies that only supervisors wear white shirts, etc. That fact is not supported with a verification or a declaration, anything like that, and would be deemed admitted. It's not controverted with specific cites to the record, for example. Paragraph 4, similar issue. It cites the declaration, paragraph 12, but if you look at the declaration in paragraph 12, it doesn't stand for what it says it stands for in the response brief. Paragraph 5, paragraph 8, paragraph 10, 11, 12, 14, 20, 22, 23, all have the same issue, a denial without a controverted fact. What I think is actually fatal to the claim is paragraph 26 of the response brief. While he has a paragraph, I mean a page, probably a little more than a page, of citations to other things in the record, the first sentence of the response is a plain denial, again, but it's not supported by the declaration, it's not supported by cites to the record, and in fact, there's nothing in the declaration relating to these particular facts. And I'll just read the fact. The position of supervisor was eliminated, the Campbell client location, as of February 4, 2019, because it was no longer needed. Harold was not terminated because of his age. There was still no supervisor at the Campbell client location. Again, his initial denial is just that deny that plaintiff's position was eliminated at the time of his discharge. But again, that's not properly rebutted under the local rules, and therefore should be deemed admitted. If that's true, then I think all of the, not all of these were picked up by the trial court. Some of them were, including the unrebutted payroll reports that Your Honor mentioned with respect to my opponent. But not all of these admissions were picked up by the trial court. But I think here, given the de novo review, you could look at that and say he's now deemed that to be admitted, and therefore he can't meet his burden under any analysis, including our team's. So there are documentary records in the company's payroll system reflecting his status as a supervisor at the time of his termination. Correct. And in our motion for summary judgment, we attach an affidavit which attaches the documents, and there's payroll records for Mr. Johnson under the payroll records, and the trial court judgment picked it up as well. She references unrefuted payroll reports, and it has an S colon superv, like supervisor, in the payroll reports. Again, those weren't rebutted in any fashion and were part of the record. So he's classified for pay purposes as a supervisor. He's also full-time, and he was hired as a supervisor.  So that never changed throughout his employment. Right, and some of the, even in the deposition testimony, even though his counsel instructed him not to answer some of the questions relating to this particular issue, which I find interesting that they now say they can't or didn't, couldn't, for some reason, update their discovery before discovery closed. In his questioning, he talks for quite some time about what happened the day he was fired. And it's ironic that he talks about his wife was there, and Mr. Barone spoke to his wife or spouse, and that these were the questions asked. And I asked him anything else probably five times in the deposition transcript for this exact reason, because there was nothing else said. But his declaration, which was properly pointed out as being the sham affidavit rule was properly applied, in my opinion, now says, all of a sudden, after the close of discovery, that, including up until February 4th, 2019, that Mike Barone called me an old man. So to say that all of a sudden, on the day of firing, he was called an old man, and not disclose that fact until, obviously, we had filed our motion for summary judgment almost 18 months after the close of discovery, I think is the whole reason the sham affidavit rule exists, so people don't just create facts to get past the summary judgment motion. If I would. Right, we are familiar with the reasons for the sham affidavit rule, but the district court did not explain, the judge didn't explain in her decision what she was applying the sham affidavit rule to. She just said she's applying the sham affidavit rule to certain averments, which she will disregard in Johnson's March 2022 declaration, that contradict his December 2020 deposition testimony. So without rummaging around in the record, we're not going to know what was in the district judge's head about what she was disregarding. Well, there are two paragraphs in particular, paragraph 7.1 and paragraph 9, that contradict what his deposition testimony was. Okay, so we're going to find all this in your briefing in the district court about what was actually disregarded, what you asked the judge to disregard. I'm trying to figure out what the judge disregarded. Yes. Did she disregard just some of the state, the so-called aegis statements, or did she disregard something about his status as a supervisor? Did she disregard something about what he was told about why he was being fired? What is it that the district judge excluded under the sham affidavit rule? Or maybe we should just set that whole issue aside, since she didn't explain. Two pertinent facts in the declaration that are new and different, that are different from his deposition is paragraph 7.1, which talks about at the time of termination, him saying, oh, I asked him if I could go part-time. Because in his deposition, he doesn't say that. After many, many, many of my questions, anything else said during that call. Okay, that's an important fact. Correct. And also paragraph 9 of the declaration, where he says, Mike Brony called me old man several times now from 2017 through the date of firing, which is a new fact. And, of course, that was not stated anywhere in discovery ever. Okay, so his declaration placed approximate, or identified approximate aegis comment, or approximate to the firing. The other problem was that the others were distant from the firing. Correct. This was the first time he'd ever said it happened through and including his termination date. So it introduced two facts, disputed facts, that were not discussed at the deposition that were consequential to the legal issues in the case. Yes, Your Honor. Okay. After we raised that there was no contemporaneous act, that's when it, now there's an allegation that there was. So by piecing together what you were challenging under the sham affidavit rule and what the record shows, we'll be able to infer what the district judge had in her mind when she applied the sham affidavit rule? Well, I think most of what's in the declaration is actually not, a lot of it is an argument of why he didn't produce information. So there's really not that many actual facts in the declaration. Okay. I think I'm out of time. Yes. Should I follow up on your question, Chief Judge? On page 41 of his deposition transcript, he does say, and on several occasions, after he talks about the September 17th occasion at the restaurant, he does say, and on several occasions he referred to me as an old man. How is that inconsistent with his declaration? Because we had asked him when and where and what happened, and he described these two lunches in 2017. Right. And then he says, and on several occasions he referred to me as an old man, but there isn't any follow-up on what those other occasions were. Well, that's where only then a couple pages from when, in my opinion, counsel had instructed his client not to answer, answered his phone, asked his assistant for water, was talking to the witness when he was testifying, told the witness don't guess, like was interfering with the questioning so much that I terminated the deposition, but we were getting into that line of questioning. But again, I don't think it's not my duty to disclose the facts. I think it's his. It's his burden, and discovery was still open. We took, I think, I'm almost saying the wrong number, but I want to say seven or eight depositions after this deposition of lots of people. There was no statement that he's ever provided from his wife, for example, who was on the call when he was terminated to say that he was called an old man. There's been nothing other than a vague reference, and I did ask him what all the bases were for his belief in the deposition, for why he was terminated, for an age-based reason, and he didn't give me that, and I did ask for many follow-ups on that piece. Thank you. Thank you. Thank you for your time. All right, Mr. Gomberg, you had a little bit of time left for rebuttal. Thank you, Your Honor. Just to address some of what was just discussed. Again, Judge Coleman said that being a supervisor, whether or not Mr. Johnson was a supervisor was a material issue of fact. We don't have to accept that. This is de novo review. Okay, well, I'm just saying that she didn't, I'm not aware of any reference to the fact that there were pay records that indicated . . . It's in the decision, and it's in the record. Okay, I didn't see it in the decision, but okay. Also, I just want to reiterate that Mr. Johnson didn't get to, we didn't get to finish the deposition. I'm not aware of anything in the court's opinion that specifically indicated what statements in the declaration would be considered to be stricken, and I'm not aware of anything that says that Mr. Johnson in the declaration says that he said that he was asking for a part-time job at the time of termination. So that, I believe, is in contrary to what our counsel just said. And again, this is something that counsel didn't bring up. Some of the things that she was talking about, about a verification of statements, quite frankly, I've never heard that before. I don't see it in any briefs. So I'm not even really aware of what counsel was referring to in that regard. We hope that this court would give us an opportunity to present this matter to a jury. Thank you very much. Thank you very much. Our thanks to both counsel, all counsel. The case is taken under advisement.